# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| REGIONAL MULTIPLE LISTING SERVICE OF MINNESOTA, INC., *doing business as NorthStarMLS*, | Civil No. 12-965 (JRT/FLN) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| AMERICAN HOME REALTY NETWORK, INC., | |
| Defendant. | |

Calvin L. Litsey, and Mary Andreleita Walker, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402-3901; Brian N. Larson and Mitchell A. Skinner, **LARSON/SOBOTKA PLLC**, 2701 University Avenue S.E., Suite 201, Minneapolis, MN 55414, for plaintiff.

Jeffrey C. Brown, **SAPIENTIA LAW GROUP**, 12 South Sixth Street, Suite 1242, Minneapolis, MN 55402, for defendant.

Plaintiff Regional Multiple Listing Service of Minnesota, Inc. ("RMLS") brought this action for copyright infringement against defendant American Home Realty Network, Inc. ("AHRN"). RMLS owns the NorthstarMLS® Database ("NorthstarMLS®"), a private database that contains active real estate listings, comparable and sold properties, and property records from Minnesota and Wisconsin. (Compl. ¶ 9, Apr. 18, 2012, Docket No. 1.) RMLS claims that AHRN unlawfully reproduced NorthstarMLS's® copyrighted photographs and content on AHRN's website,

http://www.NeighborCity.com ("NeighborCity"). Specifically, RMLS alleges that AHRN has reproduced (1) the selection of fields, descriptors, and other content on NorthstarMLS® as well as (2) fifty photographic works on NorthstarMLS® that depict property in Minnesota. (Compl. ¶ 16; Supp. Decl. of John Mosey ¶ 2, June 1, 2012, Docket No. 21.) RMLS seeks a preliminary injunction to protect its copyrights during the pendency of this action. AHRN moves to dismiss for lack of jurisdiction or, in the alterative, to transfer this case to the Northern District of California. For the reasons explained below, the Court will deny AHRN's motion to dismiss or transfer this action and will grant in part RMLS's motion for a preliminary injunction.

## BACKGROUND

### I.    RMLS AND NORTHSTARMLS®

RMLS is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. (Compl. ¶ 3.) It is a multiple listing service[1] company that serves more than 13,000 real estate brokers and agents in Minnesota and western Wisconsin. (*Id.* ¶ 8.)

RMLS provides information to participating brokers and real estate agents through NorthstarMLS®. NorthstarMLS® participants enter into an agreement with RMLS to upload their real estate listings to NorthstarMLS®. (Decl. of John Mosey ¶ 4, May 16, 2012, Docket No. 18.) The participants upload photographs of a property, enter some

---

[1] "A multiple listing service is a common database where member companies submit listings to facilitate the exchange of information about one another's listings so agents can cross company lines to sell one another's houses and can show clients all houses on the market, not just those homes listed with their own company." *Mid-America Real Estate Co. v. Iowa Realty Co., Inc.*, No. 4:04-CV-10175, 2004 WL 1280895, at *2 (S.D. Iowa 2004).

factual information, such as list price, and also select other items from a dropdown menu of "field descriptors" created by RMLS, such as "Main Floor Full Bath," "Private Master," and "Whirlpool." (*See* Decl. of Tim Schirm, Ex. C at 6, May 17, 2012, Docket No. 17.) In return, RMLS sends to a participating broker's consumer-facing website an "IDX Data Feed" that includes the broker's own listings and the listings of all other NorthstarMLS® participants. (Mosey Decl. ¶ 4.) According to RMLS, brokers benefit from receiving the IDX Data Feed because potential buyers who visit a broker's website to view the listings may be persuaded to hire the broker and its agents. (*Id.*) Agents and brokers also use NorthstarMLS® for access to real estate listings and information in their respective markets. (Compl. ¶ 9.)

## II.     RMLS's COPYRIGHTS

### A.     The Copyrights

RMLS has registered copyrights in the selection, coordination, and arrangement of the fields, descriptors, and content on NorthstarMLS® ("the compilation content"). (Compl. ¶ 11.) (*Id.*; Mosey Decl., Ex. C.)[2] Below is an example of the compilation content that RMLS created for a property in Chisago Lake Township, Minnesota:

> Agent Remarks:     Agents this is a must see for your lakehome buyers. Main flr living, gradual slope to lake, sandy lakeshore, finished lower level, ceramic tile & infloor heat, 2 decks & much more.  Agent/Seller, questions call listing office.  Provide as much notice for show

---

[2] When applying to register the compilation content, RMLS submitted sixty-six pages of deposit material featuring more than fifty real estate listings. (*See* Schirm Decl., Exs. C, D.)

Public Remarks:    Lakefront living at it's [sic] finest!   Southern views from either of your 2 decks or patio, Full finished basement w ceramic tile & infloor heat, & many more upgrades.  Sandy lakeshore, yard w minimal maintenance, perfect for that getaway you've been looking for

Bath Description:   Main Floor Full Bath, Upper Level ¾ Bath, ¾ Basement

Roof:                       Asphalt Shingles, Pitched, Age 8 Years or Less

Amenities-Unit:    Deck, Patio, Dock, Balcony, Kitchen Window, Vaulted Ceiling(s), Tiled Floors, Walk-In Closet, Washer/Dryer Hookup, Security System

Special Search:     Main Floor Laundry, All Living Facilities on One Level

(Schirm Decl., Ex. E at 8.)  In addition to the compilation content, RMLS has registered the copyrights in some of the photographs that accompany listings for real estate on NorthstarMLS®.  (Compl. ¶ 12.)

**B.     Ownership and Use of the Copyrights**

In some cases, RMLS has complete ownership over its copyrights.  RMLS also gives participants in NorthstarMLS® the option of joint ownership of copyrights to the materials they submit, with RMLS owning twenty-five percent undivided interest in the copyrights and the participant holding a seventy-five percent interest.  (*See* Mosey Decl., Ex. A at 3.)  If the broker chooses this option, RMLS's contract states that the broker

"may make unfettered and unrestricted use of the [copyrighted item] in perpetuity." (*Id.*, Ex. A at 3; *see also id.* ¶ 4, Ex. B at 2.)[3]

Participants of NorthstarMLS® are prohibited from leaking content from the database beyond the data that they contribute, however. (*Id.*, Ex. A at 5.) Participants are liable for at least $1,000 in liquidated damages for each real estate listing they disclose in contravention of their contract with RMLS. (*Id.*, Ex. A at 5.) In turn, RMLS agrees not to distribute participant listings to any third party that does not subscribe to NorthstarMLS® unless it first obtains the express written permission of the participant. (*Id.* ¶ 4, Ex. A at 4.)

## III.   AHRN AND NEIGHBORCITY

### A.   AHRN

AHRN is a Delaware corporation, with its principal place of business in San Francisco, California. (Decl. of Ali Vahabzadeh ¶¶ 1, 3-6, May 11, 2012, Docket No. 10.) AHRN owns NeighborCity, (Supp. Decl. of Ali Vahabzadeh ¶ 3, June 7, 2012, Docket No. 26), and manages, maintains, and operates it from offices in California, (Vahabzadeh Decl. ¶ 4). AHRN's ten employees all reside in California, and AHRN has

---

[3] RMLS stated at oral argument that it does not own copyrights – even jointly – to all of the content or photographs on NorthstarMLS® because some participants opt out of assigning copyrights to RMLS, although RMLS does own copyrights for the items specifically at issue in this action. (*See* Mosey Decl., Ex. A at 3.) RMLS claims that it places watermarks on the photographs for which it owns copyrights. As discussed below, because RMLS has registered its copyrights and AHRN has not challenged RMLS's copyright ownership for the purposes of this motion, the Court will decline to delineate between those items that RMLS does and does not own. The Court's injunction, however, will extend only insofar as copyrights are owned or co-owned by RMLS.

never had any employees or business representatives travel to Minnesota for business purposes. (*Id.* ¶¶ 3, 6.)

## B. NeighborCity

NeighborCity offers three primary services to its visitors. First, NeighborCity offers information to visitors about properties for sale, including listing prices, photographs, and descriptors of certain property features. NeighborCity advertises this service by stating, "Whether you're a buyer, seller, real estate agent or just shopping; NeighborCity brings you the most complete look at your local real estate market." (Supp. Mosey Decl., Ex. R.) According to AHRN, the data displayed about properties on NeighborCity is obtained from multiple sources, none of which involve direct access to NorthstarMLS®.[4]

Second, NeighborCity connects prospective buyers with buy-side real estate agents. (*See id.*, Ex. R.) Users may click a "contact" button provided on an agent's profile, after which AHRN contacts the agent to make sure that he or she is available. If

---

[4] AHRN has not stated where, specifically, it obtained the photographs and property descriptions at issue in this action. RMLS hypothesizes that, to obtain NeighborCity's property descriptions and photographs, AHRN is scraping NorthstarMLS® content from publicly available websites where RMLS has licensed display. (Mosey Decl. ¶ 15.) According to AHRN, NeighborCity obtains information directly from brokers and agents, through county tax assessor's offices and related public records, and from foreclosure data providers and For Sale by Owner aggregators. (Vahabzadeh Decl. ¶ 8.) It also obtains school data from education.com, maps and Streetview from Google, and geolocation data from third-party providers. (*Id.*) AHRN's CEO Jonathan Cardella was quoted in a newspaper stating that, because multiple listing services rejected his attempts to license data, he had to circumvent them by using data from other sources. (Mosey Decl. ¶ 21; Ex. J.) In its terms of use, NeighborCity states that is obtains data from outside sources, including multilisting services. (Supp. Mosey Decl., Ex. S.)

the agent is available, AHRN passes the user's request on to the agent, and the agent may contact the user through a temporary telephone number assigned to forward calls to the user. If the agent is unavailable or not interested in participating, AHRN repeats this process with other agents until it locates and contacts an available agent. (Vahabzadeh Decl. ¶ 10.) Users may also click a "Request Information" link or a "Schedule a Viewing" link, after which AHRN will route a user's request to an available agent. (*Id.* ¶ 10.)

AHRN is compensated for its agent matching and referral services by taking a percentage – it appears thirty percent – of a local agent's commission if the agent sells a property to a buyer who contacted the agent via NeighborCity. (*See id.* ¶ 11.)[5] At oral argument, AHRN stated that it sometimes enters into contracts to obtain these commissions electronically over the NeighborCity website.

The final service NeighborCity offers is providing performance metrics, rankings, and statistics regarding real estate agents to assist buyers in finding an effective agent. (*Id.* ¶ 8; Supp. Vahabzadeh Decl. ¶¶ 3-6.) AHRN claims this is a unique service offered by NeighborCity.

## IV. NEIGHBORCITY'S SIMILARITIES TO NORTHSTARMLS®

The parties dispute the level of similarity between NeighborCity and NorthstarMLS®. AHRN points out that NeighborCity does not copy all of the content on

---

[5] If the home purchase is not closed by the particular agent to whom a referral is made, AHRN collects no compensation. (Vahabzadeh Decl. ¶ 11.)

NorthstarMLS®. In its listings, NorthstarMLS® provides information including brief property descriptions, list prices, years built, features of lake/waterfront properties, above ground square footages, statuses of ownership, the dimensions and size of lots, homestead statuses, features of fuel systems, water systems, and sewer systems, coordinates for exact locations, specific room dimensions, bathroom details, and some financial and tax information. (*See* Schirm Decl., Exs. C and D.) NeighborCity, in contrast, includes only some of this information. (*See id.*, Ex. E.) NeighborCity does not, for example, have a breakdown of individual room dimensions. (*See id.*) NeighborCity is also formatted differently than NorthstarMLS®. (*See id.*, Ex. E.) For example, the list price on NeighborCity is located to the right of the address, not below the address like on NorthstarMLS®. (*See id.*, Ex. E.)

RMLS claims, however, that NeighborCity and NorthstarMLS® have substantial similarities. NeighborCity displayed the fifty copyrighted photographs that are the subject of this action. (*Id.* ¶ 18.)[6] A side-by-side comparison of RMLS's compilation content and NeighborCity's listings also reveals similarities in the content on the two sites. For example, for the property in Chisago Lake Township, MN, described above, NeighborCity listed the following information:

Property Description:     Lakefront living at it's [sic] finest! Southern views from either of your 2 decks or patio, Full finished basement w ceramic tile & infloor heat, & many more upgrades. Sandy lakeshore, yard

---

[6] AHRN claimed at oral argument that it has now removed these photographs from NeighborCity. AHRN has submitted no exhibits to establish that this removal in fact occurred.

|                    |                                                                                                                                                                            |
| ------------------ | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                    | w minimal maintenance, perfect for that getaway you've been looking for                                                                                                     |
| Roof:              | Asphalt Shingles, Pitched, Age 8 Years or Less                                                                                                                              |
| Exterior Features: | Balcony, Deck, Dock, Patio                                                                                                                                                  |
| Interior Features: | Kitchen Window, Security System, Tiled Floors, Vaulted Ceiling(s), Walk-in Closet, Washer/Dryer Hookup, Main Floor Full Bath, [illegible], ¾ Basement, All Living Facilities on [illegible]. |

(*Id.*, Ex. E at 8.)  This description includes word-for-word the same content found in "Public Remarks" and "Roof" sections on NorthstarMLS, as well as other information on NorthstarMLS® organized in a somewhat different fashion and under different headings.

## V.     AHRN'S CONTACTS WITH MINNESOTA BROKERS AND AGENTS

NeighborCity employees have sent at least thirty-seven e-mails to real estate agents in Minnesota.  (Mosey Decl., Ex. G; Mosey Supp. Decl., Exs. L-Q.)  In these e-mails, NeighborCity tells the agents that NeighborCity users are interested in working with them to buy a home and offers to give the agents user information in return for a thirty percent commission on an eventual sale.  (Mosey Supp. Decl., Exs. L-Q.)  Most of the e-mails involve properties in Minnesota and, to the extent the location of the buyers was apparent, real estate buyers in Minnesota.  (*Id.* ¶ 11.)

AHRN states that it has entered into only one contract with a Minnesota customer, RE/MAX Results, that resulted in a sale.  (Vahabzadeh Decl. ¶ 12.)  This sale apparently generated $3,442.42 in referral fees to AHRN.  However, an RMLS participant received an e-mail from NeighborCity about a property in Shafer Township, Minnesota, that

stated, "Because your brokerage Keller Williams Premier Realty already has a Referral Agreement on file with us . . . you accept the client referral on our agreed terms." (Mosey Supp. Decl., Ex. L.) Thus, it appears that Keller Williams and AHRN entered into some kind of contract, even if it did not ultimately generate referral fees. It also appears that AHRN entered into a contract with the Minnesota brokerage firm Home Avenue, Inc. (*See id.*, Ex. Q.)[7]

## VI. PRE-COMPLAINT ACTIONS

RMLS alleges that, in late 2011, it discovered that AHRN was copying and posting its copyrighted works on NeighborCity. (Mosey Decl. ¶ 15.) On November 15, 2011, RMLS sent a letter to AHRN demanding that AHRN immediately cease and desist from reproducing and distributing RMLS's copyrighted works. (*Id.* ¶ 17, Ex. H.) AHRN responded by offering to license RMLS's allegedly copyrighted material. (*Id.* ¶ 18, Ex. I.) RMLS denied AHRN a license and instead pursued this action. (*Id.* ¶ 19.)

## ANALYSIS

## I. PERSONAL JURISDICTION

### A. Standard of Review

AHRN moves to dismiss this action based on lack of personal jurisdiction. A plaintiff must allege sufficient facts in the complaint supporting a reasonable inference

---

[7] It is apparent that these agents are RMLS subscribers because of the way in which RMLS gathered these communications. RMLS asked its subscribers about communications they had received from AHRN. RMLS claims that it received nearly fifty responses in the first twenty-four hours. (Mosey Supp. Decl. ¶¶ 3-4, Ex. L.)

that the court can exercise personal jurisdiction over the defendant. *Wells Dairy, Inc. v. Food Movers Intern., Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). The plaintiff has the burden of proving facts to support personal jurisdiction once it has been challenged. *Id.* The court resolves factual conflicts in the non-moving party's favor. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011).

"Because Minnesota's long-arm statute is 'coextensive with the limits of due process,' the only question is whether the exercise of personal jurisdiction comports with due process." *CBS Interactive Inc. v. Nat. Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 404 (D. Minn. 2009) (quoting *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995)). Due process requires "minimum contacts" with the forum state. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). "The central question" in determining whether AHRN has sufficient minimum contacts with Minnesota "is whether [it] has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

> The Eighth Circuit has established
>
> a five-factor test . . . to determine the sufficiency of defendant's contacts . . . (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.

*Burlington Indus.*, 97 F.3d at 1102. The first three factors are "of primary importance," and the Court may consider them together. *Id.*; *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996).

"Personal jurisdiction may be established by general jurisdiction or specific jurisdiction, and the third factor – relation of the cause of action to the contacts – distinguishes between the two." *Wells Dairy, Inc.*, 607 F.3d at 518. Specific personal jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). RMLS only asserts specific personal jurisdiction. The Court will analyze the first three jurisdictional factors in the five-factor test and then the final two jurisdictional factors.

**B.     First Three Jurisdictional Factors**

To determine if the first three factors of the Eighth Circuit test support specific jurisdiction, the Court must examine whether the contacts made through NeighborCity are sufficient to support specific jurisdiction. The Eighth Circuit applies the "sliding scale" test outlined in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) to contacts made over a website, *see Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 710-11 (8th Cir. 2003), and classifies contacts according to the following criteria:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with

residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo Mfg. Co.*, 952 F. Supp. at 1124.

The Court finds that NeighborCity is an active website on the *Zippo* scale because it uses photographs and content from RMLS, a Minnesota company, to make contact with Minnesota real estate brokers, agents, and buyers and to obtain commissions from the sale of Minnesota properties. Specifically, (1) NeighborCity advertises property in Minnesota, allegedly using NorthstarMLS's® copyrighted photographs and content, to attract the business of Minnesota real estate agents and buyers; (2) as a result of such advertisements, NeighborCity has entered into contracts over its website[8] with Minnesota real estate brokers to obtain commissions from the sale of real property in Minnesota; (3) at least one contract entered into by NeighborCity over its website resulted in a sale of a Minnesota property and a commission to AHRN; (4) NeighborCity allows potential real estate buyers – including Minnesota residents – to "exchange information with the host

---

[8] Based on the evidence before it, the Court finds that AHRN likely entered into its contracts with Minnesota real estate brokers over the NeighborCity website. Furthermore, even if AHRN did not enter into these contracts over the website, AHRN's contracts to obtain a portion of the commission to a Minnesota sale, along with its other Minnesota contacts, are sufficient to confer specific jurisdiction.

computer" by requesting contact with real estate agents in Minnesota; and (5) after contacts are established over the website, AHRN provides a telephone number for Minnesota real estate agents and potential buyers to communicate.[9] AHRN's alleged use of a Minnesota resident's copyrights to seek and carry out business involving Minnesota property and residents is sufficient to establish specific jurisdiction. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (finding specific jurisdiction in California where website posted copyrighted photographs in an attempt to gain business in California).

### C.    Final Two Jurisdictional Factors

The Court must also consider the last two factors of the Eighth Circuit jurisdictional test: the interest of the state in providing a forum for residents and the convenience of the parties. *Digit-Tel*, 89 F.3d at 523. These are lesser considerations. *Stanton*, 340 F.3d at 694.

Minnesota has a strong interest in providing a forum for its residents, particularly because this case involves a Minnesota corporation, Minnesota real estate brokers, agents, and buyers, and Minnesota real estate, so this factor weighs in favor of RMLS.

---

[9] The Court is not convinced by AHRN's argument that potential real estate purchasers visit NeighborCity not because of RMLS's copyrighted content or photographs but because they are interested in buying real estate. The content on NeighborCity's website, including narrative property descriptions and photographs, was almost certainly intended to attract business in Minnesota. Indeed, photographs are the most prominent element displayed in NeighborCity's property listings. The Court concludes that AHRN's contacts with Minnesota residents and real estate brokers are almost undoubtedly the result of NeighborCity's use of allegedly infringing content and thus these contacts weigh in favor of finding specific jurisdiction.

*See Multi-Tech*, 122 F. Supp. 2d at 1052. Regarding the final factor, it is convenient for the parties to litigate in their home states, where many of their respective witnesses reside, so this factor weighs equally in favor of both parties. Considering the five-factor jurisdictional test as a whole, the Court finds that jurisdiction exists.[10]

## II. VENUE

### A. Standard of Review

In the alternative, AHRN moves to transfer venue to California. In considering motions to transfer venue, the Court uses a three factor balancing test derived from the statutory language of 28 U.S.C. § 1404(a), considering "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). These factors are not exclusive, and a district court's decision on a motion to transfer "require[s] a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant

---

[10] The "effects test," an additional factor to consider when evaluating a defendant's relevant contacts with the forum state, also supports a finding of personal jurisdiction. The "effects test" provides that a defendant's tortious acts weigh in favor of finding jurisdiction where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered – and which the defendant knew was likely to be suffered – in the forum state. *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). RMLS has made a prima facie case under the effects test that AHRN knew that RMLS was located in Minnesota, used information to advertise properties in Minnesota to potential buyers, and contacted RMLS participants in Minnesota to attempt to gain their business and obtain a percentage of their commissions. *See Dakota Indus. Inc. v. Dakota Sportswear*, 946 F.2d 1384, 1391 (8th Cir. 1991); *B.F. Goodrich Co. v. Auxitrol S.A.*, No. 00-43, 2001 WL 1640103, at *5 (D. Minn. Nov. 30, 2001). In addition, RMLS's cease and desist letter further bolsters its allegation that AHRN knew the effects of its actions. *See Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc.*, 114 F. Supp. 2d 856, 862 & n.2 (D. Minn. Sept. 25, 2000). Thus, the effects test also weighs in favor of finding jurisdiction.

factors." *Id.* AHRN has the burden of proving that a transfer is warranted. *See id.* at 695.

**B.      Convenience of Parties**

Regarding the first factor, the Court finds that California would be more convenient for AHRN and Minnesota more convenient for RMLS.  However, this factor weighs in favor of transfer only if the proposed transferee forum is "clearly more convenient when considering the aggregate interests of all parties and non-party witnesses, and the interests of justice." *ELA Med., Inc. v. Arrhythmia Mgmt. Assocs., Inc.*, No. 06-3580, 2007 WL 892517, at *8 (D. Minn. Mar. 21, 2007).  Because Minnesota is equally as convenient as California, this factor does not favor transfer.

**C.      Convenience of Non-Party Witnesses**

Regarding the second factor, RMLS has identified numerous non-party witnesses who reside in Minnesota.  Although AHRN has also identified non-party witnesses in California, AHRN has not demonstrated that these witnesses would be unwilling or unable to attend a trial in Minnesota.  The Court finds that this factor does not favor transfer because, at best, it weighs equally in favor of both fora.

**D.      Interests of Justice**

Finally, courts typically consider the following factors in evaluating the interests of justice: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a

judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l, Inc.*, 119 F.3d at 696. The Court finds that only one of these factors weighs strongly in this case: the plaintiff's choice of forum. "In general, federal courts give considerable deference to a plaintiff's choice of forum . . . ." *Id.* at 695. Thus, the interests of justice weigh against transfer as well. The Court concludes that AHRN did not meet its heavy burden of demonstrating that California is significantly more convenient than Minnesota, and it will deny the motion to change venue.

## III.    PRELIMINARY INJUNCTION

### A.      Standard of Review

Because the Court will exercise jurisdiction over this case, it will now address RMLS's motion for a preliminary injunction. The Court considers four factors in determining whether to issue a preliminary injunction: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest. *Roudachevski v. All–Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The Court will address each factor relevant to a preliminary injunction in turn.

**B.      Likelihood of Success on the Merits**

To determine if RMLS is likely to succeed on the merits, the Court must analyze whether it is likely to prevail on its copyright infringement claim.  To succeed in showing infringement, RMLS must prove ownership of a valid copyright and copying of original elements of its copyrighted works.  *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011).  For the reasons outlined below, the Court finds that RMLS is likely to prove infringement of its photographs and narrative descriptors, but that RMLS has not demonstrated a likelihood of success with regard to its other descriptors.

**1.      Ownership of Valid Copyrights**

To prevail in establishing a copyright infringement claim, RMLS must show ownership of valid copyrights.  In order to establish ownership of a valid copyright, a plaintiff must show that its work is original and can be copyrighted and that it has complied with all applicable statutory formalities.  *Thimbleberries, Inc. v. C & F Enters., Inc.*, 142 F. Supp. 2d 1132, 1137 (D. Minn. 2001) (citation omitted).  A certificate of copyright registration creates a rebuttable presumption of a valid copyright.  *Id.*; see also 17 U.S.C. § 410(c).  RMLS has a copyright registration for the compilation content and photographs at issue in this action, creating a rebuttable presumption of valid copyrights.[11]  However, "copyright protection may extend only to those components of a

---

[11] The Court finds that, at this stage, AHRN has not rebutted the presumption that RMLS owns the copyrights at issue.  For the first time, at oral argument, AHRN questioned whether RMLS has included the proper parties in this action and whether the assignments of certain copyrights to RMLS were valid.  AHRN also stated, however, that its attacks on the ownership

(Footnote continued on next page.)

work that are original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991). Thus, the Court must determine which aspects of RMLS's registered works, if any, are likely to be original and copyrightable.

### a.  Photographs

RMLS claims that it has valid copyrights to the photographs at issue. *See Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992). "Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Id.* "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *See Feist*, 499 U.S. at 345 (internal quotation marks omitted). Here, the photographs contain originality, including the angles used and the aspects of the properties they highlight, showing a high likelihood that the photographs are copyrighted.

### b.  Narrative "Public Remarks" and "Agent Remarks"

RMLS also claims that it has valid copyrights to the narrative remarks on NorthstarMLS®, listed under the categories "agent remarks" and "public remarks." Copyright law protect compilations, *see* 17 U.S.C. § 103, defined as "work[s] formed by the collection and assembling of preexisting materials or of data that are selected,

_____

(Footnote continued.)

of the copyrights would inform the Court little on how it should handle the issues for preliminary injunction. Because AHRN has not briefed these arguments and indicated that they were not relevant to the preliminary injunction, the Court will not address them in any detail, beyond stating that, at this stage, AHRN has not successfully rebutted RMLS's presumption that it owns the copyrights at issue.

coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship," *id.* § 101. "A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement" and not to the underlying facts. *Feist*, 499 U.S. at 350-51; *see also Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 728-29 (8th Cir. 2002).[12] As with other types of copyrights, creativity must exist to protect a compilation. For example, merely copying down telephone numbers and listing them alphabetically does not invoke copyright protection because it is not creative, even if it takes significant effort to make the compilation. *Feist*, 499 U.S. at 362-63.

The Court finds that the narrative "agent remarks" and "public remarks" in NorthstarMLS's® compilation of facts about properties for sale are likely copyrightable. These remarks are uniquely-phrased descriptions of property, highlighting those parts of a property that might be most attractive to agents and the public; for example, the public remarks for the Chisago Lake Township property state, "Sandy lakeshore, yard w minimal maintenance, perfect for that getaway you've been looking for." (*See* Schirm Decl., Ex. E at 8.) These narrative descriptions are likely sufficiently creative to warrant copyright protection.

---

[12] RMLS admits it does not own a valid copyright for the underlying facts on NorthstarMLS®, such as listing prices and the numbers of bedrooms and bathrooms.

### c.     Field Descriptors

The Court must further determine if RMLS's selection of field descriptors in the NorthstarMLS® compilation is copyrightable.  NorthstarMLS® includes descriptors like:

> Amenities-Unit:     Deck, Patio, Dock, Balcony, Kitchen Window, Vaulted Ceiling(s), Tiled Floors, Walk-In Closet, Washer/Dryer Hookup, Security System.
>
> "Main Floor Full Bath, Private Master, Full Master, Full Basement, Separate Tub & Shower, Whirlpool" and "Main Floor Bedroom, All Living Facilities on One Level."

(Schirm Decl., Ex. E at 8, Ex. C at 9.)

The Court finds that RMLS has not established at this stage that it is likely to succeed in protecting the selection of these field descriptors, although the Court may reconsider this issue at a later stage in the litigation.  The descriptors do not seem sufficiently creative to warrant protection, especially one-word descriptors such as "deck" and "patio."  *See Schoolhouse*, 275 F.3d at 730 (finding that topics such as "Classes Offered" and "Certified Staff" were "obvious labels for these categories and therefore lack originality").  Furthermore, "[s]imilarity in expression cannot be used to show copyright infringement when there is only one way or only a few ways of expressing an idea."  *Id.*  There are limited ways of expressing the basic facts included in these field descriptors, suggesting these expressions by RMLS are not copyrightable.  *See id.*

### 2.     Copying of Copyrighted Material

Because RMLS's photographs and narrative remarks are likely copyrightable, the Court must determine if RMLS has shown that AHRN likely copied these materials. Specifically, the Court must consider whether AHRN, as a factual matter, copied portions of RMLS's material and whether, as a mixed issue of fact and law, those elements of the material that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable. *See Control Data Sys., Inc. v. Infoware, Inc.*, 903 F. Supp. 1316, 1320 (D. Minn. 1995) (citing *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993)).

Copying can be shown either by direct evidence of copying or access to the copyrighted material and substantial similarity between the copied material and the copyrighted material. *Warner Bros.*, 644 F.3d at 595. Direct evidence of copying is rarely available, and plaintiffs generally must offer indirect evidence to show that the defendant had access to the copyrighted materials and that the accused materials are substantially similar to the copyrighted materials. *Thimbleberries*, 142 F. Supp. 2d at 1139. "Ultimately, to prove factual copying, the plaintiff must come forward with sufficient evidence that a reasonable factfinder, taking together the evidence of access and the similarities between the [materials], could find that the second work was copied from the first." *See Gates Rubber*, 9 F.3d at 833.

### a.    Photographs

Because AHRN has published exact copies of photographs on NeighborCity, RMLS is highly likely to succeed in showing infringement of the copyrighted photographs.  *See id.*  Indeed, AHRN has raised no argument explaining why it did not infringe RMLS's copyrighted photographs.

### b.    Narrative "Public Remarks" and "Agent Remarks"

The Court further finds that the word-for-word similarity between the "public remarks" on NorthstarMLS® and the "Property Descriptions" on NeighborCity will almost certainly convince a factfinder that AHRN copied "public remarks" from NorthstarMLS's® creative copyrighted content.[13]  *See Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1142 n. 3 (8th Cir. 1989) (citing *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978)) (holding that access itself can be inferred "[w]here the similarity between the original and the copy is so striking as to preclude any possibility of independent creation.").  Accordingly, the Court finds that RMLS is likely to succeed in showing infringement of NorthstarMLS's® narrative "public remarks" and of the fifty

---

[13] Unlike the "public remarks," it does not appear that AHRN has copied the "agent remarks" from NorthstarMLS®.  The Court will nonetheless preliminarily enjoin AHRN from copying RMLS's "agent remarks" because of the similarity of these remarks to the "public remarks" found on NorthstarMLS®.

photographs on NorthstarMLS® but not infringement of RMLS's selection of its other descriptors.[14]

## C.    Irreparable Harm

The Court must also determine if RMLS has shown a likelihood of irreparable harm.  Irreparable harm occurs when a party has shown injury "of such a nature that money damages alone do not provide adequate relief."  *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 986 (8th Cir. 2008).  Irreparable harm as defined for the purposes of injunctive relief "must be both certain and great; it must be actual and not theoretical.  Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time[.]"  *Packard Elevator v. Interstate Commerce Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986) (internal quotation marks and alterations omitted).  The burden is on the moving party to show irreparable harm.  *Id.*[15]

---

[14] AHRN also argues that RMLS cannot enforce its copyrights because RMLS does not have complete control over them.  Specifically, AHRN claims that RMLS does not have control over its copyrights because some of the copyrights have co-owners and because RMLS allows some NorthstarMLS® participants to make unfettered use of their contributions to the database.  However, AHRN has not cited any authority for its contention that RMLS cannot enforce its copyrights.  RMLS has the right to bring an action for infringement for copyrights that it co-owns.  *See Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007).  Furthermore, owners of copyrights may license the use of their copyrights.  *Id.*  Thus, AHRN has not established that RMLS lacks the ability to enforce its copyrights, and the Court finds that RMLS is likely to succeed in doing so.

[15] The Court will assume without deciding that there is no presumption of irreparable harm in a copyright infringement case, in light of the Supreme Court's ruling in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).  *See Capitol Records Inc. v. Thomas-Rassett*, 680 F. Supp. 2d 1045, 159 (D. Minn. 2010) (declining to determine if a presumption of irreparable harm applied because the plaintiff showed irreparable harm without such a presumption).

The Court finds that RMLS has shown a significant threat of irreparable harm to its customer goodwill. *See Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1999) (holding that the loss of customer goodwill can qualify as irreparable harm). There are two primary reasons why RMLS has demonstrated this threat of irreparable harm. First, AHRN has detracted from the value of RMLS's IDX Data Feed, which RMLS offers to its participants to increase the possibility of those participants attracting new business. Second, RMLS's goodwill is highly likely to suffer because AHRN violates expectations created by RMLS's contracts, wherein RMLS has agreed not to distribute listing content without consent from listing brokers. When listing information is published in unauthorized places, especially if it causes NorthstarMLS® participants to feel coerced into giving part of their commissions to AHRN, RMLs's goodwill is very likely to be damaged. Thus, the Court finds that RMLS has shown a significant threat of irreparable harm and this factor weighs in favor of granting an injunction.[16]

### D.     Balance of the Harms and Public Interest

The third factor the Court must consider regarding a preliminary injunction is the balance of the harms. *Janel Russell Designs, Inc.*, 114 F. Supp. 2d at 863. The Court finds that some harm will come to AHRN if the preliminary injunction issues because NeighborCity may be less comprehensive; for example, AHRN may not have access to

---

[16] The Court declines to find irreparable harm based on RMLS's loss of control of its intellectual property. This harm, as presented by RMLS, is speculative and amorphous. There is no evidence, for example, that there has been dissemination of RMLS's copyrighted material beyond NeighborCity. *Cf. Capitol Records*, 680 F. Supp. 2d at 1015 (D. Minn. 2010).

other photographs of Minnesota properties. However, this harm is not significant enough to outweigh RMLS's significant interests in its copyrights because AHRN can still list and describe information about the properties at issue as long as it does not infringe on RMLS's copyrights.

Finally, the Court must consider the public interest. *Id.* "[T]he public interest is always served by upholding copyrights." *Id.* Thus, to the extent that AHRN violated RMLS's copyrights, the public interest supports granting a preliminary injunction. Because all four factors weigh in favor of RMLS's motion to the extent that it protects valid copyrights, the Court will grant the motion in part.

## E.     Scope of Injunction

The Court must finally determine the scope of the preliminary injunction. The Court will issue a preliminary injunction prohibiting AHRN from copying all current and future photographs and any current and future "agent remarks" and "public remarks" found on NorthstarMLS® for which RMLS has a copyright. "The power to grant injunctive relief is not limited to registered copyrights, or even to those copyrights which give rise to an infringement action[,]" *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994), and "[t]he weight of authority supports the extension of injunctive relief to future works[,]" *Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1392-93 (6th Cir. 1996). Because of the widespread nature of AHRN's apparent copyright infringement and the threat of future infringement, the Court finds that an

injunction enjoining the use of RMLS's current and future copyrighted materials is warranted.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Transfer Venue to the Northern District of California [Docket No. 7] is **DENIED**.

2. Plaintiff's Motion for Preliminary Injunction [Docket No. 14] is **GRANTED in part** and **DENIED in part** as follows:

(a) Defendant, along with any of its officers, directors, subsidiaries, and successors, and all persons and entities acting in concert therewith, are immediately and until further order of this Court **PRELIMINARILY ENJOINED** from engaging in any unauthorized copying, display, use, and/or public distribution of Plaintiff's copyrighted photographic works, including, without limitation, the works covered by U.S. Copyright Reg. Nos. TX VA 1-432-912; VA 1-432-913; VA 1-432-914; and VA 1-432-917;

(b) Defendant, along with any of its officers, directors, subsidiaries, and successors, and all persons and entities acting in concert therewith, are immediately and until further order of this Court **PRELIMINARILY ENJOINED** from engaging in any unauthorized copying, display, use, and/or

public distribution of the Plaintiff's copyrighted "agent remarks" and "public remarks"; and

(c)     Within ten (10) business days of the posting of the bond, Defendant shall submit to this Court an affidavit from an officer of Defendant confirming that Defendant is complying with the terms of this Order and that any copyrighted works belonging to RMLS subject to this injunction have been removed and deleted from www.neighborcity.com and from any servers or other storage devices under AHRN's control.  Such offer shall also describe in detail the procedures that AHRN has established to prevent the unlawful copying, display, use, and/or public distribution of Plaintiff's copyrighted works until further order of this Court.

3.     In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, the preliminary injunction shall become effective upon plaintiff posting a bond with the Clerk of Court in the amount of $10,000.00 for the payment of such costs and damages as may be incurred or suffered by Defendant in the event it is found to have been wrongfully enjoined or restrained.

DATED:  September 27, 2012
at Minneapolis, Minnesota.

                                        s/ John R. Tunheim
                                        _____
                                            JOHN R. TUNHEIM
                                        United States District Judge