# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| REGIONAL MULTIPLE LISTING SERVICE OF MINNESOTA, INC., *doing business as NorthStarMLS*, | Civil No. 12-965 (JRT/FLN) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO MODIFY AMENDED PRELIMINARY INJUNCTION** |
| v. | |
| AMERICAN HOME REALTY NETWORK, INC., | |
| Defendant. | |

Calvin L. Litsey, Mary Andreleita Walker, and Richard A. Duncan, **FAEGRE BAKER DANIELS LLP**, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402; Jared B. Briant, **FAEGRE BAKER DANIELS LLP**, 1700 Lincoln Street, Suite 3200, Denver, CO 80204; and Brian N. Larson and Mitchell A. Skinner, **LARSON/SOBOTKA PLLC**, 2701 University Avenue Southeast, Suite 201, Minneapolis, MN 55414, for plaintiff.

Chad A. Snyder, Adam P. F. Gislason, Matthew D. Schwandt, and Michael H. Frasier, **SNYDER GISLASON FRASIER LLC**, 233 Park Ave South, Suite 205, Minneapolis, MN 55415, for defendant.

Plaintiff Regional Multiple Listing Service of Minnesota, Inc. ("RMLS") operates a real estate listing service called NorthstarMLS. RMLS brought this action for copyright infringement against Defendant American Home Realty Network, Inc. ("AHRN"). The Court issued a modified preliminary injunction enjoining AHRN from displaying material copyrighted by RMLS without authorization. The modified preliminary injunction also ordered RMLS to place watermarks on all of the photographs on

NorthstarMLS for which it owns a copyright and to remove watermarks from any photographs on NorthstarMLS for which it does not own a copyright. RMLS now moves this Court to amend its modified preliminary injunction under Federal Rule of Civil Procedure 60(b)(6) to strike the requirement that it identify its copyrighted photographs (and only its copyrighted photographs) with a watermark because it argues that it is unable to comply with the Court's order. The Court will grant RMLS's motion to amend the modified permanent injunction by striking the watermark provision, but will order RMLS to present an alternative method by which to indicate to AHRN and the Court which of the photographs in the NorthstarMLS database are subject to the preliminary injunction order.

## BACKGROUND

Much of the background for this action is outlined in the Court's previous decisions. *See Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.* ("*RMLS II*"), Civ. No. 12-965, 2013 WL 3367132 (D. Minn. July 5, 2013); *Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.* ("*RMLS I*"), Civ. No. 12-965, 2012 WL 4470286 (D. Minn. Sept. 27, 2012). The Court will recite here only those facts relevant to this motion.

## I.     THE PARTIES

RMLS is a real estate listing cooperative company made up of more than 13,000 real estate brokers who pool and disseminate information on homes available for sale in Minnesota and western Wisconsin. Through NorthstarMLS, member-brokers enter into

an agreement with RMLS to upload photographs and submit descriptions related to a property. When brokers upload photographs, they are prompted to enter into an agreement with RMLS ("Participant Agreement"), under which they have the option of assigning twenty-five percent of any copyright they own in an image to RMLS ("Option I") or retaining any copyright the broker owns ("Option II"). RMLS acknowledges that it does not own the copyrights to all of the images in its database, but asserts that ninety-seven percent of its members select Option I, thus assigning partial ownership of any copyright to RMLS. (Decl. of John Mosey ¶ 12, July 18, 2013, Docket No. 134.)

AHRN is a company that owns and operates www.neighborcity.com ("NeighborCity"), which connects potential buyers with real estate agents based on the types of properties in which a buyer is interested. RMLS sued AHRN for copyright infringement under 17 U.S.C. §§ 101 *et seq.* when it noticed that AHRN was posting on NeighborCity the photos and descriptions for which RMLS claims it owns the copyright. (Compl. ¶¶ 20-31, Apr. 18, 2012, Docket No. 1.) Specifically, RMLS alleged that AHRN had reproduced fifty photographs for which RMLS owns the copyright. (*Id.* ¶ 16.)

## II.  SEPTEMBER 2012 PRELIMINARY INJUNCTION ORDER

The Court granted RMLS' motion for a preliminary injunction and enjoined AHRN "from engaging in any unauthorized copying, display, use, and/or public distribution of Plaintiff's copyrighted photographic works, including, without limitation, the works covered by U.S. Copyright Reg. Nos. TX VA 1-432-912; VA 1-432-913; VA

1-432-914; and VA 1-432-917." *RMLS I*, 2012 WL 4470286, at *11. The Court noted

that RMLS acknowledged that it did not own the copyrights to all of the photographs in

its database, but concluded that

> because RMLS has registered its copyrights and AHRN has not challenged
> RMLS's copyright ownership for the purposes of this motion, the Court
> will decline to delineate between those items that RMLS does and does not
> own. The Court's injunction, however, will extend only insofar as
> copyrights are owned or co-owned by RMLS.

*Id.* at *2 n.3. The Court also noted that "RMLS claims that it places watermarks on the

photographs for which it owns copyrights." *Id.* The Court concluded that there was a

rebuttable presumption that RMLS owns copyrights to the fifty photographs because the

photographs were registered with the Copyright Office and that AHRN had not rebutted

the presumption. *Id.* at *8.


### III. JULY 2013 MODIFIED PRELIMINARY INJUNCTION AND CONTEMPT ORDER

After the Court issued the preliminary injunction, RMLS moved the Court for a

finding of contempt against AHRN and its chief executive officer for alleged violations

of the preliminary injunction order. Specifically, RMLS pointed to seventy-seven

photographs that AHRN published for which RMLS alleged it owns the copyright.

(Decl. of Michael Bisping ¶ 3, Exs. 1-3, Nov. 15, 2012, Docket No. 51.) RMLS claimed

that four real estate agents took the seventy-seven photos, and those agents confirmed

that they entered into agreements assigning the copyright to their broker, and the brokers

entered into the Participant Agreement with RMLS and selected Option I to assign an

undivided twenty-five percent interest in the copyrights to RMLS. *RMLS II*, 2013 WL

3367132, at *3-*4.  RMLS also stated that it likely has a copyright registration for the seventy-seven photographs.  *Id.* at *4 n.6.  RMLS argued that AHRN's chief executive officer made a misstatement to the Court when he submitted a declaration stating that AHRN "'has ensured that its data gathering process does not copy, display, or permit public distribution of any of the data or other materials which are the subject of the Court's Order.'"  *Id.* at *8 (quoting (Decl. of Jonathan Cardella ¶ 5, Oct. 16, 2012, Docket No. 44)).

The Court concluded that RMLS had proved that AHRN violated the preliminary injunction as to the photographs taken by two of the four agents.  The Court noted that the preliminary injunction was not limited to only copyrights registered with the Copyright Office, nor to photographs that contained a watermark.  *RMLS II*, 2013 WL 3367132, at *8 n.17 ("The Court also did not limit the order to the publication of photographs that contained a watermark, although the Court noted that RMLS had indicated that it placed a watermark on all copyrighted photographs.").  Having concluded that AHRN violated the Court's order, the Court determined that AHRN had not met the burden of showing an inability to comply with the order.  The Court explained that at oral argument it "asked AHRN's attorney if AHRN was claiming an inability to comply, and AHRN's attorney responded that he did not know whether AHRN had the technological ability to comply with the Court's order."  *Id.* at *8.  The Court also noted that "AHRN has never contacted this Court for any clarification of its order, and it never complained that it was unable to carry out this Court's order because it could not determine which photographs on NorthstarMLS were subject to an RMLS

copyright." *Id.* at *9.   The Court concluded that sanctions were therefore appropriate against AHRN, but declined to hold AHRN's chief executive officer in contempt.  *Id.*

The Court did, however, modify the preliminary injunction to require RMLS to make clear which photographs in its database it holds a copyright for by ensuring that its watermark is placed on those photographs for which it owns the copyright and removing the watermark from photographs for which it does not own the copyright.  *Id.* at *20-*21. The Court explained that it

> is nonetheless concerned that AHRN may find it difficult to determine which of the photographs on NorthstarMLS are subject to a copyright by RMLS.  In its original preliminary injunction order, the Court noted that "RMLS claims that it places watermarks on the photographs for which it owns copyrights."  It is now apparent, however, that RMLS does not place watermarks on all of the NorthstarMLS photographs that RMLS claims are copyrighted.  Indeed, not all of the seventy-seven photographs subject to the contempt motion contained a watermark.
>
> Because this Court's order extends only to RMLS's copyrighted material, the Court will modify its preliminary injunction order to make clearer which photographs must be removed from NeighborCity.  The Court will order that, within thirty days, RMLS place NorthstarMLS watermarks on all of the photographs on NorthstarMLS that are subject to a copyright owned or co-owned by RMLS.  RMLS must not include a NorthstarMLS watermark on photographs for which it does not own a copyright.  No later than forty-five days after the entry of this order, AHRN must then remove all photographs from NeighborCity that are subject to an RMLS copyright, as indicated by RMLS's placement of watermarks on the photographs.

*Id.* at *10 (citation and footnotes omitted).  The Court explained that, because RMLS has no standing to protect copyright images that it does not own, the Court's order prohibits AHRN from displaying only those photographs for which RMLS owns the copyright.  *Id.* at *10 n.19.

The Court modified the preliminary injunction so that it (a) enjoined AHRN from copying, displaying, using, and/or distributing works covered by four specific copyright registrations and the photographs from the two brokers subject to the contempt order, (b) enjoined AHRN from copying, displaying, using, and/or distributing any of RMLS's other copyrighted photographic works as of August 19, 2013, and (c) ordered RMLS "to place watermarks on each photograph on NorthstarMLS to which it owns a copyright and to remove watermarks from any photographs on NorthstarMLS to which it does not own a copyright" by August 5, 2013. *Id.* at *20-*21.

## IV.     MOTION TO MODIFY THE AMENDED PRELIMINARY INJUNCTION

On July 18, 2013, RMLS filed a motion to modify the amended preliminary injunction, requesting that the Court strike the portion of the amended preliminary injunction order requiring RMLS to place watermarks on the photos for which it owns the copyright and to remove them from the photos for which it does not own the copyright. (Mot. to Modify Am. Prelim. Inj., July 18, 2013, Docket No. 131.)[1] RMLS argues that it is unable to comply with the Court's order with regard to removing the watermark from photographs for which it does not own the copyright.[2] It claims that each "photograph in

---

[1] RMLS also requested that the Court suspend the watermark requirement portion of the July 5, 2013, Order.  The Court granted the request and ordered the requirement suspended until the Court addressed the motion to amend.  (Order, Aug. 5, 2013, Docket No. 152.)

[2] Although the Court was previously concerned that the watermark was **not** placed on some of the photographs for which RMLS **did** own the copyright, RMLS has clarified and the Court is satisfied that the watermark is on all photographs, even though it does not always readily appear when printed on photographs with white space at the bottom.  The Court notes

(Footnote continued on next page.)

the NorthstarMLS database are [sic] automatically stamped with a generic 'Northstar|MLS' watermark as it is uploaded to the RMLS system," and RMLS has no "other way to add photographs to the database." (Mem. in Supp. of Mot. to Modify Am. Prelim. Inj. at 3, July 18, 2013, Docket No. 133 (citing Mosey Decl. ¶ 9).) RMLS argues that it cannot remove the watermarks from photographs because it "does not have un-watermarked, original photographs saved in its systems – it watermarks the photographs first, and then saves them." (*Id.* at 6.) It claims that in order to remove the watermark it would have to either "manually crop the watermark out of the photographs or ask the agents for the Option II listings to re-submit the photographs." (*Id.* (citing Mosey Decl. ¶ 11).)[3] It claims that, despite the fact that only three percent of its listings are "Option II" listings, there are still nearly 1,000 such listings which each include several

_____

(Footnote continued.)

that this is primarily a problem when perusing the photographs on paper or as scanned, but not when viewed on various websites to which NorthstarMLS feeds the listings.

[3] The Court is permitted to rely on the statements in the declaration. *See Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d 427, 432 (8th Cir. 1983) ("it has often been held that affidavits may be received at a hearing on a motion for a preliminary injunction" and finding "no impropriety in the district court's reliance" on affidavits in considering whether to modify a preliminary injunction without an evidentiary hearing (citing *Wounded Knee Legal Def./Offense Comm. v. Fed. Bureau of Investigation*, 507 F.2d 1281, 1287 (8th Cir. 1974))). AHRN disputes the veracity of the Mosey declaration in a letter to the Court and declaration filed almost four months after RMLS filed this motion to amend and almost three months after briefing on the motion concluded. (Letter to District Judge, Nov. 8, 2013, Docket No. 257; Decl. of Adam Gislason, Nov. 8, 2013, Docket No. 258.) RMLS objects to these filings. (Letter to District Judge, Nov. 15, 2013, Docket No. 260.) The Court is not required to consider these untimely and unsolicited filings. Moreover, AHRN's filings do not suggest that RMLS has the capacity to remove the watermark from photographs for which it does not own a copyright that already bear the mark, but rather that the percentage of Option II subscribers might be higher than 3% and that it might be possible for RMLS to distinguish between Option I and II in placing the watermark in the future. If true, neither assertion undermines the Court's determination here.

photographs, and that it "would have to continue this exercise indefinitely, given the limitations of its automatic systems." (*Id.*)   RMLS also claims that the watermark is intended to indicate source, not copyright ownership. (*Id.* at 2.)

AHRN opposes the motion to amend, arguing that RMLS has consistently described its watermarks as copyright notices throughout this litigation and that RMLS's claims of copyright ownership are overstated because hired photographers, rather than brokers, likely hold the copyright to most photos uploaded to NorthstarMLS such that any assignment by the broker to RMLS assigns no valid copyright ownership.   AHRN argues that, because of the inconsistency between RMLS's watermarks and copyright ownership, it has not met its burden of justifying the scope of the injunction issued by the Court and the injunction is therefore not narrowly tailored.   AHRN claims that this puts it in a difficult position because it is under a preliminary injunction order to not publish any of RMLS's copyrighted works under penalty of contempt, but no one, not even RMLS, can accurately identify which photographs are subject to copyright by RMLS.

## DISCUSSION

## I.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 60(b)(6), a court "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."   Relief under Rule 60(b)(6) is an "extraordinary remedy" and "does not give courts unlimited authority to fashion relief as they deem appropriate," nor is it a "substitute for other legal remedies." *In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir.

1989).  It is to be granted only "when exceptional circumstances prevented the moving party from seeking redress through the usual channels" or where exceptional circumstances have denied the moving party the full and fair opportunity to litigate the claim.  *See id.*; *United States v. Sybaritic, Inc.*, 789 F. Supp. 2d 1160, 1172 (D. Minn. 2011) (citing *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005)).

## II.     RMLS'S MOTION TO AMEND

The Court will consider RMLS's motion to amend in light of these standards for such motions under Rule 60(b)(6).  Because courts have broad discretion to modify injunctions, particularly when a provision of an injunction proves unworkable, the Court will conclude that it is within its discretion to modify the preliminary injunction to remove the watermark requirement.  However, the Court will order RMLS to submit to the Court a feasible method for identifying to AHRN the photographs for which it owns a copyright (and are therefore subject to the preliminary injunction order).  Because the modified preliminary injunction extends to all photographs for which RMLS owns a copyright but does not specify which photographs those are, RMLS must make that clear to AHRN and the Court in order to justify the scope of the injunction.

### A.     Authority to Modify a Preliminary Injunction

"In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason."  *Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d

427, 430 (8th Cir. 1983).  The Eighth Circuit noted in *Movie Systems* that the showing required for modification of a preliminary injunction is less stringent than that required for modification of a permanent injunction or consent decree.  *Id.*

Looking to the case law on modifying consent decrees, the Supreme Court has held that "[m]odification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous," or "when a decree proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public interest."  *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384-85 (1992) (internal citations omitted). Courts have interpreted this to mean that "where the order has proved to be a faulty method for accomplishing the goal for which it was designed, it would be error for a district court to refuse to grant a modification."  *Williams v. Lesiak*, 822 F.2d 1223, 1227 (1st Cir. 1987).  In light of the Eighth Circuit's determination in *Movie Systems* that the standard for modifying a preliminary injunction is less stringent than that for modifying a consent decree, the Court interprets these precedents to indicate that a preliminary injunction may be modified if it proves unworkable.

RMLS has presented evidence that the watermark provision is unworkable because it does not have the technological capacity to feasibly implement the requirement.  AHRN points to statements made by RMLS throughout this litigation suggesting that RMLS's watermark is an accurate proxy for its copyright ownership and points out that RMLS changed the watermark to not include a copyright "©" symbol at

some point during the litigation.[4]  Neither point obviates the need to relieve RMLS of a requirement that cannot feasibly be accomplished.  Certainly, RMLS was in the best position to know whether its watermark was an accurate indication of copyright ownership and likely could have determined, before the Court entered the modified preliminary injunction, both that the watermark did not accurately reflect copyright ownership and that it would be impossible for RMLS to remove the watermark from photographs.  Thus, it cannot be said that the watermark provision has proven "unworkable because of **unforeseen obstacles**."  *Rufo*, 502 U.S. at 384.

But as the Eighth Circuit noted in *Movie Systems*, the standard for modifying a preliminary injunction is less stringent than that for a consent decree, which was at issue in *Rufo*.  Thus, the Court concludes that, in light of RMLS's declaration that the watermark provision is infeasible, it is within the Court's discretion to relieve RMLS of

---

[4] AHRN also cites a case from the Southern District of New York for the proposition that name designations without a copyright symbol constituted copyright management information under the Digital Millennium Copyright Act (DCMA) and that it would be "'implausible'. . . that a 'viewer of Morel's photos would not understand' those designations to 'refer to authorship.'" (Mem. in Opp. to Pl.'s Mot. to Am. Modified Prelim. Inj. at 7, Aug. 15, 2013, Docket No. 155 (quoting *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011)).)  But there, the court was determining whether, for the purposes of a motion to dismiss, the photographer's name without the copyright symbol could constitute copyright management information ("CMI") such that the photographer stated a claim against the Associated Press and other websites for removing or altering the CMI for the purposes of concealing infringement. 769 F. Supp. 2d at 305-06.  The court's determination that designations using the photographer's name without the copyright symbol could still constitute CMI does not suggest that RMLS's claim that its watermark (which does not contain a "©") indicates source rather than authorship is disingenuous.  There the court was considering the designation for the purposes of the DCMA, which includes specific statutory language addressing a question distinct from the issue before this Court.  Regardless, the Court finds that it is within its discretion to relieve RMLS of the watermark requirement despite any reliance on the watermark RMLS may have induced from its previous representations.

the duty to comply with that provision.  The Court is inclined to do so because, although the provision sensibly sought to relieve AHRN of the burden of determining which of RMLS's photographs are subject to its copyright, the specific terms of the watermark provision were not discussed in the briefing or oral argument before the Court prior to the Court's amendment of the preliminary injunction, so RMLS had little opportunity before the Court ordered amendments to the injunction to object based on infeasibility.

The First Circuit reversed a district court's sua sponte modification of an injunction under similar circumstances.  In *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, the district court had modified an injunction in a way that had the effect of relieving the defendant from making several quarters' worth of payments to the plaintiff that previously had been ordered.  465 F.3d 33, 36 (1st Cir. 2006).  The First Circuit reversed, finding that "the structure of the federal rules and the constitutional guarantee of due process require that a court not [modify an injunction sua sponte] without giving prior notice to the parties and an opportunity for them to be heard," and that the district court had erred in ordering modification of the injunction without any prior notice or opportunity to be heard on that modification.  *Id.* at 37 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428-31 (1982); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11-12 (1978)).  Here, although the Court acted in response to RMLS's motion for contempt, the addition of the watermark provision was not requested or discussed by the parties.  The Court intended the watermark provision to serve as a practical means of enabling AHRN to comply with the preliminary injunction, and it certainly would have enabled AHRN to determine which photographs are subject to the preliminary injunction

order.  But in light of RMLS's claims that it is not feasible, the provision "has proved to be a faulty method for accomplishing the goal for which it was designed."  *Lesiak*, 822 F.2d at 1227.

## B.    Alternative Method for Identifying Copyrights

However, the Court will require RMLS to submit to the Court an alternative method by which it will indicate to AHRN which photographs are subject to a copyright by RMLS.  This is necessary to justify the scope of the preliminary injunction.

Copyright infringement injunctions should extend to only those works for which the plaintiff actually owns the copyright.  *See Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003) (where school board may not have owned the copyright in all of its tests, injunction needed to be modified to extend to only tests "in which the school board has valid and subsisting copyright," as "[n]o evidentiary basis has been laid for a broader injunction"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1229 (C.D. Cal. 2007) (noting injunction should clearly articulate that it enjoins only copyrights "in which the Plaintiffs own or control rights" (citing *Substance*, 354 F.3d at 632)).  RMLS relies upon the Eighth Circuit which stated that "[t]he power to grant injunctive relief is not limited to registered copyrights, or even to those copyrights which give rise to an infringement action."  *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994).  But that language in *Olan Mills* served to clarify that injunctions need not be limited to presently owned copyrights, but rather may cover **future owned** works.  *Id.*  It does not stand for the proposition that works that are

currently **not owned** by a plaintiff may be included in a copyright infringement injunction.

The Court followed this guidance in its initial preliminary injunction order by extending the preliminary "only insofar as copyrights are owned or co-owned by RMLS" – despite the fact that RMLS did not own copyrights for all of the photographs on NorthstarMLS – on the basis of RMLS's claim that it places watermarks on the photographs for which it owns copyrights. *RMLS I*, 2012 WL 4470286, at *2 n.3. This was appropriate at the preliminary injunction stage, where it would have been premature to require RMLS to produce evidence supporting its copyright ownership of all of the photographs upon which it would claim infringement during the course of this litigation, and RMLS had copyright registrations for the fifty photographs it submitted to the Court. *Cf. Johnson v. Radford*, 449 F.2d 115, 117 (5th Cir. 1971) ("A temporary injunction is intended to be temporary, to meet the exigencies of the situation, and necessarily at times lacks the degree of precision which may be required on final decree."). When the Court modified the preliminary injunction, there was no dispute that RMLS likely owns a copyright to some but not all of the photographs in the NorthstarMLS database.

Although the preliminary injunction continues to apply only to works for which RMLS owns the copyright, it must still be clear which photographs on NorthstarMLS are subject to RMLS's copyright and which are not. "[I]t is basic to the intent of Rule 65(d) that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987). The Court did not require

RMLS to identify at the preliminary injunction stage which of its five million photographs it owns or co-owns a copyright, (*see* Mosey Decl. ¶ 4), but instead limited the injunction to those works RMLS owns or co-owns and assumed, based on RMLS's representations, that the watermark served as a proxy for its copyright. As the watermark is not a feasible method for doing so, RMLS must identify and implement an alternative method. *See United States v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 733 (8th Cir. 2001) ("In general, the law places the burden of proof on the party asserting a contention and seeking to benefit from this contention."); *see also id.* ("Furthermore, when true facts relating to a disputed issue lie peculiarly within the knowledge of one party, it is fair to assign the burden of proof to that party."). RMLS has requested injunctive relief and is the only party with knowledge of which photographs are subject to its copyright, so the Court deems that it is appropriate in this case to require RMLS to indicate which photographs are subject to the injunction.[5] *Cf. Calvin Klein Cosmetics*, 824 F.2d at 669 ("we agree with Parfums that Paragraph 1(b) too broadly requires Parfums to guess at what kind of conduct would be deemed trademark infringement").

---

[5] RMLS offers as an alternative that it has provided to AHRN copies of the Participant Agreements in which brokers select either Option I or II as a method for AHRN to determine which photographs in the NorthstarMLS database are subject to a copyright co-owned by RMLS. This will not suffice. The documents that RMLS produced, which it confirmed constitute "all of the Participant Agreements in RMLS possession" do not completely indicate which brokers selected Option I and II. (Decl. of Adam Gislason ¶¶ 4-5, Aug. 15, 2013, Docket No. 159.) Counsel for AHRN declared that in his review of the produced documents he found that "a significant portion of the Participant Agreements are missing the pages containing the Option I or Option II selection" and that, "for some of the Agreements, the Participant did not select Option I or Option II, but left those check-boxes blank." (*Id.* ¶ 5) He concludes that "it is impossible for RMLS, AHRN, or this Court to determine from the Participant Agreements alone whether the Participant selected Option I or Option II." (*Id.*)

The need for clarity from RMLS as to the extent of the preliminary injunction is especially great where, as here, the stakes are higher for AHRN because RMLS sought and succeeded in holding AHRN in contempt for its violation of the preliminary injunction.  In light of the contempt order, AHRN must be able to discern which works it is precluded, under threat of contempt, from displaying.  Typically in the context of an order for contempt, the party "seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order," but once that showing has been made, the burden shifts to the alleged contemnors to "show an inability to comply."  *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000).

Although the Court has already issued a contempt order, this framework is instructive here.  The Court's contempt order was in conjunction with an order requiring RMLS to make clear which photographs are subject to the injunction.  When questioned by the Court at oral argument about its ability to comply with the preliminary injunction order, counsel for AHRN stated that he did "not know the technology enough to be able to tell you about the ability to comply."  (Tr. 23, May 30, 2013, Docket No. 113.) Counsel's response seemed to focus on whether AHRN's technology could read or detect RMLS's watermark, assuming that the watermark accurately identified the photographs for which RMLS co-owns a copyright, not whether AHRN could comply with the injunction if RMLS provided no indication as to its copyright ownership of individual photographs in its database.  In light of RMLS's current position that it is unable to limit the watermark to only the photographs for which it owns a copyright, AHRN has

- 17 -

sufficiently argued that it is unable to comply with the injunction because it cannot determine which photographs in the NorthstarMLS database are subject to the injunction. It claims that without accurate watermarks, it "will have no feasible way to identify the photographs RMLS actually owns, and the injunction will effectively bar it from using any photograph in NorthstarMLS, for fear of facing another contempt motion." (Mem. in Opp. to Pl.'s Mot. to Am. Modified Prelim. Inj. at 17.) Although the Court need not protect AHRN's ability to use photographs in the NorthstarMLS database for which it does not own the copyright, the owners of those copyrights are not party to this suit and the preliminary injunction and contempt orders do not extend to their works. *See RMLS II*, 2013 WL 3367132, at *10 n.19 ("RMLS also admits that it has no standing to protect copyrighted images that it does not own. Because this Court's order extends only to prohibiting AHRN from displaying copyrights owned by RMLS, RMLS must make clear which copyrights on NorthstarMLS are in fact owned by RMLS.").

Therefore, the Court will strike the watermark provision, but order RMLS to submit to the Court a proposed alternative method by which it will indicate to AHRN and the Court which photographs are subject to the preliminary injunction. If the Court determines that the proposed method is adequate, the Court will order RMLS to implement the method and will institute amended paragraph 2(b) of the preliminary injunction in a reasonable amount of time following such implementation. Providing copies of the Participant Agreements will not suffice as an alternative method, but using the software described in the Second Declaration of Jonathan Cardella, (*see* Second Decl. of Jonathan Cardella, Oct. 11, 2013, Docket No. 241), would likely suffice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Regional Multiple Listing Service's Motion to Modify the Amended Preliminary Injunction [Docket No. 131] is **GRANTED** by:

   a.      **STRIKING** amended paragraph 2(c) of the September 27, 2012 preliminary injunction order [Docket No. 35] (as amended by the order amending the preliminary injunction order [Docket No. 121]).

2.      Within **ten days** of the issuance of this order, Plaintiff RMLS shall submit to the Court a letter brief proposing an alternative method by which to indicate to AHRN and the Court which photographs in the NorthstarMLS database are subject to the Court's preliminary injunction order.  AHRN will have **ten days** after RMLS's submission to submit a response.  If RMLS does not submit a satisfactory identification method, the Court will modify the injunction to apply to only the fifty and seventy-seven photographs discussed in the Court's initial [Docket No. 35] and amended [Docket No. 121] preliminary injunction orders, for which RMLS has already shown a likelihood of success on the merits.


DATED:  December 10, 2013                    _____
at Minneapolis, Minnesota.                          s/ John R. Tunheim
                                                              JOHN R. TUNHEIM
                                                       United States District Judge